■ FLORENCE SHAPIRO, Respondent, v 350 E. 78TH STREET TENANTS CORP., Appellant. [926 NYS2d 67]—

Order, Supreme Court, New York County (Jane S. Solomon, J.), entered August 24, 2009, which granted plaintiff's motion for partial summary judgment on the issue of liability on her first and second causes of action, enjoined defendant to make repairs or improvements as necessary to restore plaintiff's use of the roof appurtenant to her apartment, and denied defendant's motion to vacate so much of a prior order permitting plaintiff to place three chairs on the roof, affirmed, without costs.

Plaintiff's status as shareholder of the subject unit entitles her to use the roof appurtenant to her apartment. The proprietary lease provides that "the Lessee shall have and enjoy the exclusive use of the . . . roof and/or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease" and the offering plan states that the tenant's roof apartment "will have the exclusive use of the roof of the Front House (and penthouse thereon)."

In 1993, a clogged drainpipe outside plaintiff's apartment

caused a leak to develop in the adjacent apartment, resulting in replacement of the roof. In 2004, after the building again suffered major leaks, investigation revealed that plaintiff had installed wooden decking on the rear roof, on which she had placed furnishings that included iron furniture and planters containing large trees and shrubbery. In the summer of 2005, in response to a February 2005 notice issued by defendant cooperative, plaintiff removed the decks, furniture and planters from the roof to permit inspection by a qualified expert, who advised that wooden decks are not recommended on flat roofs because they encourage penetrations and punctures and obscure both leak prone areas and active leaks. Defendant's expert also questioned whether a roof deck is even permissible under New York City building and fire department codes.

Plaintiff's first cause of action alleges that, by notice dated October 24, 2005, defendant forbade her to use or even walk on the roof, a proscription that was made permanent by notice dated May 26, 2006. The second cause of action alleges that defendant failed to maintain the roof in a condition that permits plaintiff to use it or walk on it. These allegations are repeated in the third cause of action as grounds supporting a mandatory injunction requiring defendant to sufficiently improve the roof to permit a weight-bearing deck to be erected thereon.

The court granted expedited judgment as to liability and enjoined defendant only "to make repairs or improvements as necessary to restore Plaintiff to her use of the roof space."

As the dissent concedes, the roof is damaged and requires repair. The current unserviceable condition of the roof is supported by an affirmation of the attorney for the cooperative in support of defendant's motion dated April 30, 2009, which stated that the roof "in its current state is not structurally sound enough to withstand the weight of plaintiff, chairs . . . and/or any other individual or item that may be placed thereon." The court further found, "As recently as April 29, 2009, the Corporation contended that the roof is in a condition of disrepair such that three persons cannot safely sit on chairs placed upon it."

Supreme Court noted that four years had elapsed since plaintiff was ordered to remove the items from the roof, and she complied with the order, but defendant had failed to repair the roof. Supreme Court properly concluded that defendant's failure to maintain the roof deprived plaintiff of its use, in violation of the offering plan and proprietary lease (see Dinicu v Groff Studios Corp., 257 AD2d 218, 224 [1999]; Washburn v 166 E. 96th St. Owners Corp., 166 AD2d 272 [1990]), warranting injunctive relief directing repairs necessary to render the roof amenable to

plaintiff's right of use under the offering plan and proprietary lease, subject to reasonable regulation by defendant (*see Benedict v International Banking Corp.*, 88 App Div 488 [1903]). In that section 7 of the proprietary lease grants plaintiff "the exclusive use of . . . that portion of the roof appurtenant to the penthouse," the injunction does no more than enforce plaintiff's contractual rights, consistent with the court's ruling on the first two causes of action.

The determination of the extent of plaintiff's permissible use, including whether plaintiff transgressed building and fire codes, involves factual questions for resolution at the trial of plaintiff's remaining causes of action, together with defendant's counterclaims, which seek compensation for roof damage alleged to have been caused by plaintiff's use. The dissent points to the affirmation of the attorney for the cooperative, which "reiterates" that "the roof was not built to support the load that plaintiff has placed upon it in the past" and that "plaintiff's unauthorized use of the roof caused any existing damage." However, this allegation is not supported by the cooperative's own engineer. In his report of the inspection of the roof conducted shortly after plaintiff had removed all structures and items, the engineer found that the rear roof is in "generally adequate condition" and the front roof "is in overall satisfaction condition." In any event this issue can be further explored on the trial of defendant's counterclaims.

The dissent misapprehends the limited scope of the injunction. Although the motion court found the prohibition against any and all use of the roof by plaintiff to constitute a breach of the lease, the injunctive order merely directs defendant to make such repairs as may be necessary to *restore* plaintiff's use of the roof, consistent only with the rights granted to her as the owner of the shares allocated to the penthouse apartment. By withholding the bulk of the injunctive relief demanded in the third cause of action, the motion court recognized that the proprietary lease and offering plan do not grant plaintiff the right to install decking, furniture or planters. As stated by the motion court, "[W]hether [p]laintiff has an absolute right to install whatever decking and furniture she wishes on the roof—plainly, she does not . . ." Whether a prior cooperative board validly authorized the installation of such items and whether such installation violated applicable City codes or caused damage to the roof structure are issues to be tried with any other surviving causes of action and the counterclaims.

Finally, should questions arise with respect to the rights and obligations of the parties, they may apply for clarification or

modification to Supreme Court which, as the court imposing the injunction, has inherent power to afford appropriate relief (*see People v Scanlon*, 11 NY2d 459, 462 [1962], citing *Dictograph Prods. v Empire State Hearing Aid Bur.*, 4 AD2d 508, 510 [1957]). Concur—Tom, J.P., Manzanet-Daniels and Román, JJ.

Andrias and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: I disagree with the majority that defendant cooperative corporation denied plaintiff her right to the use of the roof appurtenant to her apartment and that its "failure to maintain the roof deprived plaintiff of its use, in violation of the offering plan and proprietary lease." I further disagree with the majority's affirmance of the granting of a mandatory injunction requiring defendant to repair or improve the roof to restore plaintiff to her use of the roof space. As discussed below, there is no evidence that the roof requires any repairs or improvements in order to satisfy any legal obligation of defendant to plaintiff. Accordingly, I would deny plaintiff's motion for partial summary judgment and vacate the injunction.

In 1979, plaintiff purchased a cooperative penthouse apartment in a 100-year-old building on Manhattan's Upper East Side. The apartment included an adjoining rooftop space (a front roof and a rear roof) that, pursuant to the proprietary lease, she was to "have and enjoy the exclusive use of . . . subject to the applicable provisions of [the] lease." The lease further provided: "The Lessee's use [of the roof] shall be subject to such regulations as may, from time to time, be prescribed by the Directors . . . . The Lessee shall keep the . . . roof . . . clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the . . . roof of the building without the prior written approval of the Lessor . . . . Any planting or other structures erected by the Lessee . . . may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the building." In addition, the offering plan provided that plaintiff's "exclusive use of the roof" is "subject to the right of the Apartment Corporation to have access thereto whenever necessary for the maintenance and operation of the buildings." The lease also required plaintiff to comply with all local codes, permitted defendant's board of directors to determine the manner of maintaining and operating the building, and required plaintiff to indemnify defendant for liability and damage caused by her failure to comply with any of the leases' provisions.

In 1993, a leak developed in plaintiff's neighbor's apartment due to a clogged drainpipe on the roof outside plaintiff's apartment. According to an affidavit submitted by the neighbor, at some time prior to 1993 plaintiff installed large trees, shrubbery and furniture on the roof without notifying or obtaining approval from the cooperative's board of directors. An inspection of the roof revealed that it needed to be replaced because the membrane had been perforated in spots due to plaintiff's placement of furniture and plants on the roof and because of "waves" in the membrane. The inspection also revealed that the roof membrane was the wrong type for a deck surface, and that a rubberized membrane was necessary if plants and furniture were to be placed directly on the roof's surface.

The rear roof was replaced in 1993 or 1994 and again in 2001. In 2004, additional major leaks occurred. An investigation by the board revealed that plaintiff had installed wooden decks on the rear roof and, in addition to furniture, had maintained planters with large trees on the deck. Defendant maintains that plaintiff did so without written approval from the board of directors and that it was unaware of the installation of the deck until its investigation in 2004. Plaintiff maintains that in 1993, the board advised her that in order to continue her use of the roof she had to build a weight-bearing deck and had to use a specified contractor. She further maintains that she did so, and used the deck without complaint for more than 10 years. Plaintiff has not submitted any documentary evidence regarding the board's approval, written or otherwise, for the alterations she made to the roof.

After several major leaks developed in 2004, plaintiff was directed by defendant to remove all items from the roof so it could be inspected by a qualified expert in February 2005. She complied only partially. As a result of her failure fully to remove the decks and her refusal to permit access to the rear roof, the inspection did not take place until six months later, on September 24, 2005.[1] The licensed engineer who inspected the roof on defendant's behalf prepared a report stating that the rear portion of the roof was in generally adequate condition, but was uneven and ridged as a result of multiple layers of roofing

---

1. While defendant was attempting to gain access to the roof for an inspection, plaintiff sought to sell her apartment. On June 13, 2005, plaintiff advised the board that she received an offer on her apartment and planned to accept it. The board responded that the roof would have to be inspected before any sale so that the new tenants would have the correct information about what was allowed to be on the roof. It noted that once the new buyers moved in, it would consider requests from them to build new decking if the board deemed their proposal safe and appropriate for the roof.

having been applied over many years. He noted that a spigot at the rear of the penthouse (apparently installed by plaintiff without board approval) was leaking, causing both premature aging of the roof and the potential for leakage into the apartment below. Defendant's engineer added that wooden decks are not recommended on flat roofs because they encourage penetrations and punctures, obscure leak prone areas and active leaks, entrap debris that accelerates aging, and complicate roof repairs. Nonetheless, he noted that the front roof appurtenant to plaintiff's apartment was in overall satisfactory condition.

An addendum to the engineer's report stated that further investigation into New York City building and fire department codes revealed additional concerns. He stated both that a deck is not permitted because it could result in loading that would exceed maximum load levels for flat roof structures. More specifically, he stated that "[t]he live load of people upon the deck combined with the dead load of the deck itself, and any additional loads typically applied to roof structures, could exceed the structural limits of the roof framing system." Additionally, defendant's engineer stated that a roof deck would hinder the ability of the Fire Department to accomplish roof ventilation.

At a shareholders' meeting held on or about October 10, 2005, the board voted to prohibit plaintiff from reinstalling the decks on the roof. At this same meeting, the shareholders ratified the decision of the board. Plaintiff, who did not attend the meeting, was subsequently advised that the shareholders "have decided that no deck(s) are allowed to be installed on any of the roofs."[2] Thereafter, in May 2006, the board declined to reconsider its determination that decking could not be installed.

In April 2007, plaintiff commenced this action asserting various causes of action related to defendant's alleged interference with her use of the roof. Thereafter, defendant attempted to negotiate a settlement with plaintiff. Sometime in 2008, the board provided plaintiff with an 11-page alteration agreement requiring, among other things, detailed plans, a $20,000 security deposit and evidence of insurance. By letter of October 10, 2008, plaintiff's counsel advised defendant's counsel that he had consulted with an engineering firm regarding proposed installation of noncombustible material to serve as decking, and, before obtaining detailed plans, was providing specifications for the board's review. Specifically, plaintiff's counsel proposed, based on the engineer's recommendation, that rubber pavers be installed on the front and rear roofs above an inorganic drain-

---

**2.** Plaintiff maintains that in February 2006, the prospective buyers cancelled the contract of sale upon hearing of this restriction.

age mat. Counsel stated both that the pavers could be easily removed if the roof underneath required repair or replacement and were within the appropriate weight range for the building design and the applicable code requirement. Plaintiff's counsel provided information regarding the rubber pavers but did not submit a report from an engineer to support his statements.

By letter of November 24, 2008, plaintiff's counsel responded to concerns raised by defendant's engineer regarding the material's fire resistance and the roof's maximum load allowance, but still did not submit a report or affidavit from an engineer to support his assertion that defendant's concerns had been addressed. Nonetheless, he asked that the board approve plaintiff's request to install the rubber pavers on the roof.

By letter of December 31, 2008, defendant's engineer advised that the material in question was not intended as a roof surfacing or roofing product, especially on combustible roof decks. He further stated that the pavers do not provide any water or weather resistance, would not be appropriate for the weight-bearing capacities of the building, and were not compliant with the New York City Building Code. Specifically, he referenced section 1607.11.2.2 of the Code entitled "Special-purpose roofs," which provides that "[r]oofs used for promenade purposes shall be designed for a minimum live load of 60 psf [pounds per square foot]" and that those "used for roof gardens or assembly purposes shall be designed for a minimum live load of 100 psf" (NY City Building Code § 1607.11.2.2, reprinted in Administrative Code of City of NY, tit 28, ch 7). Defendant's engineer explained that the roof of the building "was designed and constructed to support a live load of 30 pounds per square foot" and "is highly inadequate to satisfy the code provisions for promenade and assembly areas."

Defendant's engineer also stated that plaintiff's counsel's assertion that the weight of the rubber pavers was within the appropriate range required by the Building Code was incorrect. In this regard, the engineer cited the Building Code, which defines dead loads as "[t]he weight of materials of construction incorporated into the building, including but not limited to walls, floors, roofs, ceilings, stairways . . . and other similarly incorporated architectural and structural items" (NY City Building Code § 1602.1). The code further provides that dead loads are considered permanent loads (*id.*). Live loads, on the other hand, are defined in relevant part as those loads produced "during the life of the structure by movable objects such as planters and by people" (*id.*). He explained that the assertion that the pavers are live loads "is absolutely invalid" because

they "are not 'movable' in a manner that people and planters are movable, and they are intended to lay on the roof in a permanent manner." He also noted that the use of the rubber pavers on a roof is not compliant with the wind resistance and uplift requirements contained in the Building Code (citing § 1609.1.3). Additionally, the engineer noted that even assuming the rubber pavers could be utilized, the Building Code allows only 20% of the roof to be covered by a rubber paving system (citing § 1509.9).

In September 2008, plaintiff amended her complaint. The first cause of action for breach of contract alleges that defendant breached the proprietary lease and offering plan by notifying plaintiff in October 2005 that "she could not use the roof" and restricted her "from even walking on the roof." It further alleges that defendant subsequently advised her in May 2006 "that its prohibition of her use of the roof and terraces was permanent and would not be again discussed." Plaintiff maintains that defendant's actions "unilaterally prohibit[ed] [her] use of the roof." The second cause of action, also for breach of contract, alleges that defendant breached the proprietary lease by failing to maintain the structural integrity of the roof and to keep it in good repair. It also alleges breach of the offering plan, in that defendant failed to maintain the roof in a manner such that plaintiff was able to use it.

In the third cause of action, plaintiff alleges that defendant did not have the authority to rescind unilaterally her right to use the roof, and requests a mandatory injunction requiring defendant "to repair, replace or improve the roof, its membrane and decking sufficient to permit an appropriate weight-bearing deck to be placed thereon" so that she can "use . . . the roof as required under the Offering Plan and Proprietary Lease." Plaintiff subsequently moved for partial summary judgment on these causes of action. The remaining causes of action are not before us on appeal.

Supreme Court granted the motion, ruling that plaintiff is entitled to summary judgment as to liability on her first and second causes of action for breach of contract. It also granted that portion of the motion seeking a mandatory injunction and directed defendant "to make repairs or improvements as necessary to restore [p]laintiff to her use of the roof space."

"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). As discussed below, nothing

submitted in support of plaintiff's motion satisfied this burden. Thus, the motion and the injunction should have been denied.

To begin, and although the parties do not address the issue, the injunction is impermissibly vague. Although plaintiff requested an injunction that would require work on the roof so as "to permit an appropriate weight-bearing deck to be placed thereon," the injunction does not state that the work it mandates be sufficient to support a weight-bearing deck. Should it nonetheless be interpreted to impose that requirement? What use or uses of the deck are encompassed by the requirement that the work be such as to "restore [p]laintiff to her use of the roof space?" Presumably, although the injunction does not mention the subject of responsibility for the costs of the work, defendant must pay for the work even though it is for plaintiff's sole benefit.

Under the offering plan and proprietary lease, plaintiff is entitled to the exclusive use of the roof. The documentary evidence allegedly supporting plaintiff's claim that she was deprived of all use of the roof, however, establishes nothing so sweeping. Rather, it establishes only that defendant precluded her from reinstalling a deck on the roof. To be sure, in opposing plaintiff's motion, defendant does not specifically argue that it did not deprive plaintiff of any use of the roof. Fairly read, however, it does so implicitly. In response to plaintiff's claim that she was not permitted to walk on the roof, defendant asserted that plaintiff did not want merely to walk on the roof but rather sought to have the roof improved and a deck installed for her sole benefit, at its expense. It further asserts that plaintiff made these demands without regard to the rights of the cooperative and the applicable lease provisions.

Neither the affidavits submitted by plaintiff and her counsel nor the accompanying exhibits establish plaintiff's entitlement to summary judgment. Precluding plaintiff from reinstalling a deck in the absence of any evidence that her proposal was safe and compliant with the applicable building and fire codes does not constitute a breach of contract. The roof is currently composed of the same type of roof material that was present at the time plaintiff purchased the apartment and signed the proprietary lease. Nothing in the lease or the offering plan provides that plaintiff is entitled to a different type of roof or to a deck. To the contrary, the lease provides that plaintiff must obtain defendant's written consent to make any alterations to the roof and that any alterations would be made at her expense. It also provides that "[a]ny planting or other structures erected by [plaintiff] . . . may be removed and restored by [defendant] at the expense of [plaintiff] for the purpose of repairs, upkeep or

maintenance of the building." Plaintiff is apparently of the view that her right to the exclusive use of the roof entails the unrestricted right to place a deck and plantings on the roof so that denying her that ostensible right is tantamount to denying her any use of the roof. Neither the lease, the offering plan nor common sense supports that view. Likewise, there is no evidence establishing that defendant failed to maintain the structural integrity of the roof or that it failed to keep the roof in good repair. Thus, plaintiff has not met her burden of demonstrating that defendant breached the lease or the offering plan. Although the burden never switched to defendant, it must be noted that, contrary to plaintiff's allegations, the report submitted by defendant's engineer states that the rear roof is in "generally adequate condition" and that the front roof "is in overall satisfactory condition."

As for the majority's implication that defendant's counsel conceded that the roof is in disrepair, that is a distortion of the record. According to the majority, defendant's counsel stated that the roof "in its current state is not structurally sound enough to withstand the weight of plaintiff, chairs . . . and/or any other individual or item that may be placed thereon." However, the entire statement made by defendant's counsel is as follows: "Based on the plaintiff's prior, illegal use of the roofs adjacent to the penthouse, it follows that the roof as constructed and in its current state is not structurally sound enough to withstand the weight of plaintiff, chairs [(]See prior chairs on the roof annexed as Exh. 'F') and/or any other individual or item that may be placed thereon, in light of its age and the excessive loads it has sustained in the past due to plaintiff's placement of unauthorized installation of decking, furniture and plants." Exhibit F consists of two photographs depicting the large chairs, furniture and plants placed on the roof by plaintiff. Far from being an admission by defendant's counsel that defendant has failed to keep the roof in good repair, the statement reiterates that the roof was not built to support the load that plaintiff has placed upon it in the past. It also reiterates defendant's position that plaintiff's unauthorized use of the roof caused any existing damage. The extent of the damage allegedly caused by plaintiff and the issue of who should be required to make or pay for any necessary repairs are additional questions of fact precluding an award of summary judgment.[3] The mere fact that certain repairs may be necessary does not establish a breach by defendant.

---

**3.** Although these are highly contested issues in this case—and the majority does not contend otherwise—the majority nonetheless does not explain

Because no breach was established, it follows that plaintiff is not entitled to any injunctive relief. Although the want of a breach is sufficient by itself to require reversal, it also should be stressed that the record is bereft of any evidence that this 100-year-old building can structurally support a deck, furniture and trees. Nor is there any evidence that the installation of such a deck will comply with the Building Code and the applicable fire laws. If anything, the only record evidence on this latter score is to the contrary.

The majority makes no attempt to answer the obvious questions that arise from the vague terms of the injunction. To the contrary, it only makes matters worse with its curious reference to a grant of "injunctive relief directing repairs necessary to render the roof amenable to plaintiff's right of use under the offering plan and proprietary lease, subject to reasonable regulation by defendant." It is not at all clear what is signified by the majority's deletion of the words "or improvements" from the injunction; nor is it clear why the majority adds words, i.e., "subject to reasonable regulation by defendant," that do not appear in the injunction. Confoundingly, even as it affirms a grant of partial summary judgment on liability for breach of contract, the majority writes that "determination of the extent of plaintiff's permissible use, including whether plaintiff transgressed building and fire codes, involves factual questions" to be decided at trial. The majority puts defendant in an untenable position. A trial in the future will determine what defendant, on pain of contempt, is required by law to do now!

The majority asserts that I "misapprehend[ ] *the limited scope* of the injunction" (emphasis added). It is the majority that misapprehends the injunction and the circumstances under which it was granted. In addition to its failure to explain how or why an injunction is warranted given plaintiff's obvious failure to meet her burden of proof, a failure the majority does not even address, the majority fails to explain what repairs are necessary pursuant to "the limited scope of the injunction." By affirming the injunction, the majority implicitly assumes that, contrary to the proprietary lease and the offering plan, plaintiff is entitled to more than the roof as it was at the time she purchased the apartment. This is particularly untenable given the majority's recognition that one of the issues to be determined at trial is "the extent of plaintiff's permissible use [of the roof]." Defendant is being forced to make the roof suitable for a use

---

why plaintiff is entitled to summary judgment on its second cause of action alleging breach of contract on the ground that defendant failed to maintain the structural integrity of the roof and to keep it in good repair.

that has yet to be defined—an impossible situation that serves only to underscore the vagueness and unenforceability of the injunction. **[Prior Case History: 2009 NY Slip Op 31831(U).]**